TRITIA M. MURATA (CA SBN 234344)
TMurata@mofo.com
MAYA HAREL (CA SBN 291990)
MHarel@mofo.com
MONICA A. RODRIGUEZ (CA SBN 299026)
MRodriguez@mofo.com
LAUREN R. LEIBOVITCH (CA SBN 323230)
LLeibovitch@mofo.com
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, California 90017-3543
Telephone: 213.892.5200
Facsimile: 213.892.5454

Attorneys for Defendant
UNITED PARCEL SERVICE, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MICHELLE RIZVANOVIC, individually, and on behalf of all others similarly situated,

Plaintiff,

v.

UNITED PARCEL SERVICE, INC., an Ohio Corporation; and DOES 1 to 10,

Defendants.

Case No. 1:21−CV−01278−BAK (SKO)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF MICHELLE RIZVANOVIC'S INDIVIDUAL CLAIMS AND TO DISMISS HER CLASS CLAIMS**

CLASS ACTION

Date: August 17, 2022
Time: 9:30 a.m.
Courtroom: 7, 6th Floor

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION. ..... 1

II. RELEVANT BACKGROUND. ..... 1

A. Plaintiff's employment with UPS delivering packages from her personal vehicle within the State of California. ..... 1

B. Plaintiff agreed to arbitrate her individual claims with UPS and not to bring them on a class-wide basis. ..... 2

C. This lawsuit. ..... 2

III. LEGAL FRAMEWORK. ..... 3

IV. ARGUMENT. ..... 5

A. Plaintiff does not fall within the transportation worker exemption of the FAA. ..... 5

B. The arbitration agreement is governed by the FAA. ..... 6

C. Under the FAA, Plaintiff's arbitration agreement should be enforced according to its terms. ..... 7

1. The parties entered into a valid arbitration agreement. ..... 7

2. Each of Plaintiff's individual claims fall squarely within the scope of the agreement. ..... 8

D. This lawsuit should be dismissed because Plaintiff waived the right to bring a class action. ..... 9

V. CONCLUSION. ..... 9

## TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265 (1995) .......... 6

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .......... 8

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) .......... 7

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 .......... 6

*Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104 (9th Cir. 2002) .......... 8

*Duarte v. JPMorgan Chase Bank, Nat'l Ass'n*, No. 2:21-cv-01907-ODW, 2021 WL 5299908 (C.D. Cal. Nov. 15, 2021) .......... 7

*Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928 (9th Cir. 2013) .......... 8

*Hamrick v. Partsfleet, LLC*, 1 F.4th 1337 (11th Cir. 2021) .......... 3, 5, 6

*Hedges v. United Parcel Serv. of Am., Inc.*, No. 20-CV-870 (BMC), 2020 WL 4481657 (E.D.N.Y. Aug. 4, 2020) .......... 9

*Holman v. Bath & Body Works, LLC*, No. 1:20-cv-01603-NONE-SAB, 2021 WL 5826468 (E.D. Cal. Dec. 8, 2021) .......... 8

*Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) .......... 7

*Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348 (2014) (abrogated on other grounds) .......... 9

*Maharaj v. Charter Commc'ns, Inc.*, No. 20-cv-00064-BAS-LL, 2021 WL 5014352 (S.D. Cal. Oct. 27, 2021) .......... 7, 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) .......... 3

*Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (2020) .......... 1, 3, 4, 5

*Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022) ....................1, 4, 5, 6

*Southwest Airlines Co. v. Saxon*, 142 S. Ct. 638 (2021) ....................3

*Stolt-Nielsen v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010) ....................6

*Waithaka v. Amazon.com, Inc.*, 966 F.3d 10 (1st Cir. 2020) ....................3

*Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798 (7th Cir. 2020) ....................3

*Wulfe v. Valero Ref. Co. - Cal.*, 641 F. App'x 758 (9th Cir. 2016) ....................7

**Statutes**

9 U.S.C. § 1 ....................3, 5

9 U.S.C. § 2 ....................3, 6, 7

9 U.S.C. § 4 ....................7

Civ. Code § 1550 ....................7

## I. INTRODUCTION.

Plaintiff Michelle Rizvanovic is a former seasonal personal vehicle driver (PVD) for Defendant United Parcel Service, Inc., an Ohio corporation (UPS). As a seasonal PVD, she arrived at the facility or a designated storage container where packages awaited delivery, loaded her assigned packages into her personal vehicle, and delivered those packages to addresses within the State of California. Plaintiff filed this putative class action against UPS, alleging that she and other PVDs were not provided meal and rest periods and were not paid for all hours worked, among other things. Apart from the fact that her claims lack merit, Plaintiff agreed to arbitrate, not litigate, all disputes arising from her employment with UPS. Plaintiff further agreed not to bring any putative class claims against UPS in any forum. Plaintiff's claims are subject to arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq*. Although the Ninth Circuit held in *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (2020), that certain last-mile drivers fell within the FAA's transportation exemption, that decision has been undermined by the Supreme Court's recent ruling in *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 1783 (2022). Accordingly, Plaintiff's individual claims should be compelled to arbitration and her putative class claims dismissed.

## II. RELEVANT BACKGROUND.

### A. Plaintiff's employment with UPS delivering packages from her personal vehicle within the State of California.

Plaintiff worked for UPS as a seasonal PVD during UPS's "Peak" season, from October 22, 2019 to December 31, 2019. (Compl., ECF No. 1, Ex. A, ¶ 13.) Plaintiff was based out of the Stockdale Center, which is located in Bakersfield, California. (Compl., ¶ 17; Declaration of Matthew Rogers (Rogers Decl.), ¶¶ 2, 3.) As a PVD, Plaintiff delivered packages from her personal vehicle, making local deliveries within the city of Bakersfield. (Compl., ¶ 15; Rogers Decl., ¶ 3.) To perform her job, Plaintiff traveled to the Stockdale Center or a designated storage container where packages await delivery by PVDs. (Compl., ¶ 17; Rogers Decl., ¶ 3) Plaintiff then loaded her assigned packages into her personal vehicle, and scanned each package with a UPS-issued handheld device that, in turn, gave her the delivery route for that package. (Compl.,

¶¶ 17, 18.) At no point did Plaintiff load or unload any packages on or off an airplane or other vehicle traveling to or from a different state or country. (Rogers Decl., ¶ 3.) In the course of her work with UPS, Plaintiff delivered packages only to addresses within the State of California. (*Id.*)

**B. Plaintiff agreed to arbitrate her individual claims with UPS and not to bring them on a class-wide basis.**

As part of the application process for the PVD position, Plaintiff was presented with an arbitration agreement. (Declaration of Jeffrey Boyd (Boyd Decl.), ¶ 3, Ex. A. [Acknowledgement of PEAK Season Hiring Policy].) On October 11, 2019, Plaintiff electronically signed the agreement that provided in bold capital letters "**BY PROVIDING YOUR ELECTRONIC SIGNATURE, YOU ARE ACKNOWLEDGING YOU HAVE READ, REVIEWED, AND AGREE TO THIS AGREEMENT TO ARBITRATE.**" (*Id.*, Ex. A.) By its terms, Plaintiff agreed to arbitrate, and not litigate "any dispute arising out of or related to [her] application or selection for employment, employment, and/or termination of employment" with UPS and "disputes arising out of or relating to . . . compensation, classification, minimum wage, expense reimbursement, overtime, breaks and rest periods, . . . and state statutes or regulations," among other things. (*Id.*, ¶ 3.) Plaintiff further agreed that any such claims would be brought "on an individual basis and not on a class and/or collective action basis." (*Id.,* ¶ 6.) The agreement makes clear it is "governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce[.]" (*Id.*, ¶ 2.)

**C. This lawsuit.**

Plaintiff filed this putative class action complaint against UPS in Kern County Superior Court on July 14, 2021. On August 20, 2021, UPS removed this case to this Court. The complaint alleges seven causes of action for (1) unpaid overtime, (2) unpaid meal period premiums, (3) unpaid rest period premiums, (4) failure to pay minimum wages, (5) failure to furnish timely and accurate wage statements, (6) failure to pay all wages owed upon termination, and (7) violation of California's unfair competition law. (Compl., ¶¶ 39-102.) Plaintiff purports to bring this action on behalf of herself and all current and former seasonal PVDs and non-exempt

employees who drove their personal vehicles to deliver packages in California. (*Id.*, ¶ 33.) She also seeks to represent six subclasses based on the first six causes of action. (*Id.*, ¶ 34.)

At the outset, UPS informed Plaintiff and this Court that Plaintiff signed an arbitration agreement with a class action waiver. (*See* Joint Scheduling Report, ECF No. 8; UPS's Mem. of Points and Authorities in Support of UPS's Motion to Stay Proceedings, ECF No. 15-1, 3:5-7.) Plaintiff declined to dismiss this case and arbitrate her individual claims. (*See generally* Joint Scheduling Report, ECF No. 8; Plaintiff's Opp. to UPS's Motion to Stay Proceedings, ECF No. 16, 1:9-28.)

On December 10, 2021, the Supreme Court granted certiorari in *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 638 (2021), to review the scope of the FAA's transportation worker exemption. When Plaintiff refused to stipulate to a stay, UPS moved to stay this action pending the Supreme Court's decision in *Saxon*, and on April 21, 2022, this Court granted UPS's motion. On June 6, 2022, the Supreme Court decided *Saxon*, and on June 29, 2022 the stay in this action was lifted.

## III. LEGAL FRAMEWORK.

The FAA codifies "a liberal federal policy favoring arbitration" and "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The FAA provides that an arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. The FAA, however, includes an exemption for employment contracts of "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The courts of appeals are divided on whether this exemption extends to workers making exclusively intrastate deliveries of packages that previously traveled interstate.[1]

[1] The Seventh and Eleventh Circuits held the transportation worker exemption does not extend to workers making such intrastate deliveries. *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 803 (7th Cir. 2020); *Hamrick v. Partsfleet, LLC*, 1 F.4th 1337, 1351 (11th Cir. 2021). The First and Ninth Circuits held it does. *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 26 (1st Cir. 2020); *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 915.

In *Rittmann*, the Ninth Circuit held that certain last-mile drivers making only intrastate deliveries fall under the transportation worker exemption because the "packages they carry are goods that remain in the stream of interstate commerce until they are delivered." 971 F.3d. at 915. The Supreme Court in *Saxon*, however, undermined *Rittmann*'s reasoning (while ultimately concluding that the worker there, an airline baggage handler, fell within the exemption).

***First***, *Saxon* removed one of the pillars underlying *Rittmann*'s statutory construction. *Rittmann* held that "[t]he nature of the business for which a class of workers perform their activities must inform [the] assessment" of whether that "class of workers is 'engaged in . . . interstate commerce.'" 971 F.3d at 917 (quoting *Waithaka*, 966 F.3d at 19). In support of that conclusion, *Rittmann* invoked the *ejusdem generis* canon, stating that the "residual clause of Section 1" must be construed "consistently with the specific preceding categories of workers—'seamen' and 'railroad employees,'" groups that, according to *Rittmann*, were "defined by the nature of the business for which they work." *Id.* (quoting *Waithaka*, 966 F.3d at 19). It thus held that last-mile delivery drivers for Amazon fell within the exemption because "Amazon's business includes not just the selling of goods, but also the delivery of those goods." *Id.* at 918.

*Saxon*, however, rejected precisely this use of the *ejusdem generis* canon. 142 S. Ct. at 1790-92. The employee there invoked that canon to argue that "all airline employees who carry out the 'customary work' of the airline" should fall within the exemption. She based this argument on the premise that "railroad employees" and "seamen" in the exemption "refer generally to employees in those industries providing 'dominant mode[s] of transportation' in interstate and foreign commerce." *Id.* at 1790-91 (citation omitted). She then contended "that all 'workers who do the work of the airlines have the same relationship to commerce as those who do the work of the railroad or ship.'" *Id.* (citation omitted). The Supreme Court found plaintiff's "attempted invocation of *ejusdem generis* . . . unavailing because it proceeds from the flawed premise that 'seamen' and 'railroad employees' are both industrywide categories." *Id.* at 1791. In fact, the category of "'seamen' includes only those who work on board a vessel" and thus just "a subset of workers engaged in the maritime shipping industry." *Id.* The Court concluded that the transportation exemption "exempts classes of workers based on *their* conduct, not their

*employer's*." *Id.* at 1788 (citation omitted; emphasis in original). *Rittmann* thus erred by basing its interpretation of the transportation exemption in part on the "nature" of Amazon's business, rather than only on the conduct of the class of workers. 971 F.3d at 916-18.

***Second***, *Saxon* based its analysis on close examination of worker conduct rather than loose notions of a stream of interstate commerce—an approach irreconcilable with *Rittmann*. *Rittmann* found that Amazon's last-mile drivers fell within the exception because the "packages they carry are goods that remain in the stream of interstate commerce until they are delivered." 971 F.3d at 915. *Saxon*, however, read the exemption to cover only "workers *directly involved* in transporting goods across state or international borders." 142 S. Ct. at 1789 (emphasis added). On the facts of *Saxon*, that test was satisfied—"airline employees who physically load and unload cargo on and off planes traveling in interstate commerce are, as a practical matter, part of the interstate transportation of goods." *Id.* In other words, *Saxon* put the focus on the workers, not the goods, while *Rittmann* incorrectly did the opposite. *See Hamrick*, 1 F.4th at 1350 ("Section one is directed at what the class of workers is engaged in, and not what it is carrying.").

***Third***, *Saxon* noted that the work of last-mile drivers is "further removed from the channels of interstate commerce or the actual crossing of borders" than was the work of the baggage handler before it. 142 S. Ct. at 1789 n.2 (citing *Rittmann*, 971 F.3d at 915). To be sure, the Court found it unnecessary to decide whether the exemption applied to such workers to decide the case before it. *Id.* But for all the reasons just discussed, its reasoning undermines *Rittmann*'s resolution of the question.

## IV. ARGUMENT.

Plaintiff does not fall within the FAA's transportation worker exemption, and the arbitration agreement entered into by UPS and Plaintiff is thus enforceable. For these reasons, Plaintiff's individual claims are subject to arbitration and her class claims should be dismissed, requiring the dismissal of this action.

### A. Plaintiff does not fall within the transportation worker exemption of the FAA.

As a threshold matter, Plaintiff does not fall within the transportation worker exemption of the FAA because she is not "engaged in foreign or interstate commerce." 9 U.S.C. § 1. Here,

Plaintiff is not "directly involved in transporting goods across state or international borders." *Saxon*, 142 S. Ct. at 1789. Plaintiff did not load or unload any packages on or off an airplane or other vehicle traveling to or from a different state or country, and Plaintiff has never physically crossed state lines in the course of her work with UPS. (Rogers Decl., ¶¶ 3-4); cf. *Saxon,* 142 S. Ct. at 1788.) Instead, Plaintiff's work consisted of solely *intrastate* activity—arriving to the facility or designated storage container where packages awaited delivery, placing her assigned packages into her personal vehicle, scanning the packages to receive the assigned routes through her UPS-issued handheld device, and delivering packages to their local destinations within the State of California. *See Hamrick*, 1 F.4th at 1350 ("[I]n the text of the exemption, 'engaged in foreign or interstate commerce' modifies 'workers' and not 'goods.'"). As a PVD, Plaintiff was far removed from the channels of interstate commerce or the actual crossing of borders. Thus, because Plaintiff does not fall within the scope of the transportation worker exemption, the FAA applies to the arbitration agreement.

**B. The arbitration agreement is governed by the FAA.**

Agreements to arbitrate, including agreements to arbitrate employment disputes, are enforceable under the FAA, 9 U.S.C. § 1 *et seq*. *See, e.g., Stolt-Nielsen v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681-82 (2010); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109, 122-23. The FAA applies by its terms to arbitration provisions in any contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. The U.S. Supreme Court has interpreted this language as signaling "an intent to exercise Congress' commerce power to the full." *See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995); *see also Circuit City Stores*, 532 U.S. at 124 (arbitration agreements between local employees and nationwide companies are subject to the FAA).

Here, the FAA governs the arbitration agreement entered into by UPS and Plaintiff. By its own terms, the arbitration agreement states it is "governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq. and evidences a transaction involving commerce." (Boyd Decl., Ex. A, ¶ 2.) Further, and as Plaintiff alleges in her complaint, UPS is a multinational package delivery and supply chain management company. (Compl., ¶ 12; Boyd Decl., ¶ 5; *see also Duarte v.*

*JPMorgan Chase Bank, Nat'l Ass'n*, No. 2:21-cv-01907-ODW (AFMx), 2021 WL 5299908, at *3 (C.D. Cal. Nov. 15, 2021) ("as long as an employer's 'overall employment practices affect commerce, the Commerce Clause requirement is satisfied'" (citation omitted)).) It is also undisputed that Plaintiff is a citizen of California and UPS is a citizen of Ohio and Georgia, and therefore, the employment relationship involved interstate commerce within the scope of the FAA. (*See* Notice of Removal, ECF No. 1, ¶ 8(a) & (c); Compl., ¶¶ 5, 7.; *see also Wulfe v. Valero Ref. Co. - Cal.*, 641 F. App'x 758, 760 (9th Cir. 2016) (relationship involved interstate commerce where employer-defendant was a citizen of Texas and plaintiff was a citizen of California and worked at one of employer-defendant's California facilities).) Thus, Plaintiff's employment relationship with UPS "involved commerce" under the FAA.

**C. Under the FAA, Plaintiff's arbitration agreement should be enforced according to its terms.**

Under the FAA, courts are required to compel arbitration upon a showing that (i) a valid arbitration agreement exists, and (ii) it covers the present controversy. 9 U.S.C. §§ 2, 4; see *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). As set forth below, Plaintiff's arbitration agreement is enforceable because the parties entered into a valid arbitration agreement that covers Plaintiff's claims.

**1. The parties entered into a valid arbitration agreement.**

Plaintiff entered into a valid arbitration agreement with UPS. To assess an agreement's "validity," courts apply ordinary state-law contract principles. *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003). Under California law, the essential elements of a contract are "(1) [p]arties capable of contracting; (2) [t]heir consent; (3) [a] lawful object; and (4) a sufficient cause or consideration." Civ. Code § 1550; *see also Maharaj v. Charter Commc'ns, Inc.*, No. 20-cv-00064-BAS-LL, 2021 WL 5014352, at *5 (S.D. Cal. Oct. 27, 2021).

All requirements are met here. **First**, the parties were legally capable of entering into a contract. Plaintiff is of legal age to enter into a contract and does not dispute she is of sound mind for purposes of contracting. (Boyd Decl., ¶ 4.) **Second**, there was mutual consent to be bound by the agreement. UPS presented Plaintiff with the arbitration agreement during the application

process and Plaintiff electronically signed it. And by providing her electronic signature, Plaintiff acknowledged that she read, reviewed, and agreed to the arbitration agreement. (Boyd Decl., ¶ 3, Ex. A.) **Third**, a contract to arbitrate is lawful. *See Maharaj*, 2021 WL 5014352, at *5 ("the subject of arbitration is a lawful object of contract"). **Fourth, and finally**, UPS's employment of Plaintiff, its agreement to arbitrate employment-related disputes, and its payment of Plaintiff's compensation all constituted sufficient consideration to create a contract between the parties. (*See* Boyd Decl., Ex. A, ¶ 2 [arbitration agreement applies to claims UPS may have against Plaintiff]); *see also Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (employer's "promise to be bound by the arbitration process itself serves as adequate consideration"); *Holman v. Bath & Body Works, LLC*, No. 1:20-cv-01603-NONE-SAB, 2021 WL 5826468, at *5 (E.D. Cal. Dec. 8, 2021) (valid consideration where plaintiff accepted employer's offer in exchange for agreement to arbitrate, and plaintiff continued to work for employer afterward).

**2. Each of Plaintiff's individual claims fall squarely within the scope of the agreement.**

Because the scope of an arbitration agreement is a matter of contract, determining whether a dispute is subject to arbitration is a matter of contract interpretation. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011) ("[a]rbitration is a matter of contract, and the FAA requires courts to honor parties' expectations"); *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937-38 (9th Cir. 2013) (courts must look to "the express terms of the agreements at issue" to determine whether the parties have agreed to arbitrate their claims).

Here, Plaintiff's individual claims are covered by the express terms of the arbitration agreement. Plaintiff's claims center around her contention she is owed wages and penalties as a result of UPS's alleged failure to properly provide her meal and rest breaks and compensate her. These claims are covered by the arbitration agreement, which expressly includes "any dispute arising out of or related to [her] application or selection for employment, employment, and/or termination of employment" with UPS and "disputes arising out of or relating to . . . compensation, classification, minimum wage, expense reimbursement, overtime, breaks and rest

periods, . . . and state statutes or regulations." (Boyd Decl., Ex. A, ¶ 2.)

* * *

In sum, because UPS and Plaintiff entered into a valid arbitration agreement that covers all of Plaintiff's individual claims, the Court should compel Plaintiff to arbitrate, rather than litigate, her individual claims.[2]

**D. This lawsuit should be dismissed because Plaintiff waived the right to bring a class action.**

The Supreme Court has held that class action waivers in arbitration agreements are to be enforced according to their terms. *Concepcion*, 563 U.S. 333 at 352; *see also Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 366 (2014) (abrogated on other grounds) (concluding "in light of *Concepcion* that the FAA preempts" older California case invalidating class action waivers in certain employment contracts).

Here, in addition to agreeing to arbitrate any employment-related disputes with UPS, Plaintiff also agreed that any action against UPS would be brought "on an individual basis and not on a class and/or collective action basis." (Boyd Decl., Ex. A, ¶ 6.) Plaintiff waived the ability to pursue class-wide claims in any forum. Her putative class claims must therefore be dismissed, and thus, with no claims remaining in this Court, this lawsuit should be dismissed.

## V. CONCLUSION.

Plaintiff entered into an arbitration agreement governed by the FAA that compels the arbitration of her individual claims against UPS and bars her from bringing any dispute as a putative class action. For all the foregoing reasons, this Court should grant UPS's motion, order Plaintiff to arbitrate her individual claims against UPS, dismiss her class claims, and dismiss this lawsuit.

---

[2]This same agreement has been analyzed and held enforceable in another matter. *See Hedges v. United Parcel Serv. of Am., Inc.*, No. 20-CV-870 (BMC), 2020 WL 4481657, at *5 (E.D.N.Y. Aug. 4, 2020). This Court should find the agreement enforceable here, too.

Dated: July 8, 2022

Respectfully submitted,

MORRISON & FOERSTER LLP

By: */s/ Tritia M. Murata*
Tritia M. Murata

Attorneys for Defendant
UNITED PARCEL SERVICE, INC.