UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE RIZVANOVIC,<br><br>Plaintiff,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC.<br><br>Defendant. | Case No. 1:21-cv-01278-CDB<br><br>ORDER GRANTING IN PART MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S INDIVIDUAL CLAIMS AND TO DISMISS PLAINTIFF'S CLASS CLAIMS<br><br>(Doc. 24) |

Before the Court is Defendant United Parcel Service, Inc.'s ("Defendant") Motion to Compel Arbitration of Plaintiff's Individual Claims and to Dismiss Plaintiff's Class Claims (Doc. 24), Plaintiff Michelle Rizvanovic's ("Plaintiff") Opposition to the motion (Doc. 25), and Defendant's Reply (Doc. 26).[1]

**Background**

Plaintiff is a former seasonal personal vehicle driver ("PVD") that worked for Defendant, an Ohio Corporation. (Doc, 1, Complaint ¶¶ 7, 13; Doc. 25-1, Rizvanovic Decl. ¶ 3). On September 26, 2019, Plaintiff applied for a PVD position with Defendant through Defendant's online application portal called upsjobs.com. (Doc. 24-3, Boyd Decl. ¶ 2). Through the portal, Plaintiff created a profile. *Id*. To create a profile, Plaintiff provided login information, her email,

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Christopher D. Baker for all purposes. (Docs. 12, 31).

1 and a "unique secure password," to access her account. *Id*. As part of the application process, Plaintiff was presented with several documents—one of them being an electronic version of the "Acknowledgment of PEAK Season Hiring Policy." *Id*. at ¶ 3.

On October 11, 2019, Defendant claims Plaintiff electronically signed the "Acknowledgment of PEAK Season Hiring Policy." *Id*. To do so, Plaintiff checked a box that stated: "I agree that my electronic signature is the legally binding equivalent to my handwritten signature. By my electronic signature, I acknowledge that I have carefully reviewed this Agreement and understand its contents." *Id*. Plaintiff states she "did not electronically, or by other means, read and accept the Arbitration Agreement…did not agree to enter into the Arbitration Agreement…did not intend to be bound by it [and] do not remember the Arbitration agreement at all." Rizvanovic Decl. ¶ 11.

The Agreement in question sets forth that it is an employment contract "governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. and evidences a transaction involving commerce." Boyd Decl. Ex. A. at ¶ 2.

Section 2 of the Agreement states, if the Federal Arbitration Act does not apply to the Agreement, then the law of the state in which services were primarily performed shall govern. *Id*. The Agreement requires signing parties to not litigate "any dispute arising out of or related to application or selection for employment, employment, and/or termination of employment" with Defendant and "disputes arising out of or relating to…compensation, classification, minimum wage, expense reimbursement, overtime, breaks and rest periods…and state statute or regulations." *Id*. Further, the Agreement provides "the Arbitrator, and not any court, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability or waiver of this Agreement, including, but not limited to any claim that all or any part of this Agreement is void or voidable. However,…the preceding sentence does not apply to Class Action Waiver…." *Id*.

Section 6 of the Agreement requires "[Defendant] and [Plaintiff] to bring any claim on an individual basis and not on a class and/or collective action basis." Boyd Decl. Ex. A. at ¶ 6. "[A]ny challenge to the Class Action Waiver…including, but not limited to, any claim that all or

2

part of the Class Action Wavier…is invalid, unenforceable, unconscionable, void or voidable, may be determined only by a court of competent jurisdiction and not by an arbitrator." *Id*. Additionally, "[t]he Class Action Waiver shall be severable from this Agreement if there is a final judicial determination that the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable." *Id*.

From October 22, 2019, to December 31, 2019, Plaintiff worked as a seasonal PVD for Defendant based out of the Stockdale Center, located in Bakersfield, California. Rizvanovic Decl. ¶ 3; Compl. ¶ 13. Plaintiff's duties as a PVD required her to travel to a designated UPS storage container or a UPS customer center in Bakersfield to pick up various packages for delivery. Rizvanovic Decl. ¶ 3; Doc. 24-2, Rogers Decl. ¶ 3. According to Plaintiff, Defendant required her to scan each package with a "UPS-issued handheld device," which in turn gave her the delivery route for each package. Rizvanovic Decl. ¶ 7; Compl. ¶ 18. Plaintiff claims Defendant required her, and other PVDs, to deliver 120 packages in a regular 8-hour shift, one package every 4 minutes. Rizvanovic Decl. ¶ 8; Compl. ¶ 18. Plaintiff delivered packages only to addresses within the State of California. Rogers Decl. ¶ 3.

Plaintiff claims Defendant instructed her to clock out for meal periods and that she could not scan packages while she was clocked out during her meal period. Rizvanovic Decl. ¶ 9; Compl. ¶ 20. Plaintiff alleges Defendant instructed her, and other PVDs, to work through meal periods to drive to and from their designated pick-up areas to fully reload their car with packages. Rizvanovic Decl. ¶ 10; Compl. ¶ 21. Plaintiff asserts that during her employment, she and other PVDs were not afforded and did not take lawfully required rest periods. Rizvanovic Decl. ¶ 11; Compl. ¶¶ 23-25. On December 31, 2019, Plaintiff's employment ended with Defendant. Rizvanovic Decl. ¶ 3; Rogers Decl. ¶ 3; Compl. ¶ 13.

On July 14, 2021, Plaintiff filed a class action complaint against Defendant in Kern County Superior Court. (Doc. 1 at ¶ 2 and Ex. A). In her complaint, Plaintiff asserts claims against Defendant for violations of California's Labor Code and California's Business & Professions Code. Specifically, Plaintiff alleges seven causes of action: (1) unpaid overtime, (2) unpaid meal period premiums, (3) unpaid rest period premiums, (4) failure to pay minimum

wages, (5) failure to furnish timely and accurate wage statements, (6) failure to pay all wages owed upon termination, and (7) violation of California's unfair competition law. *Id*. at ¶¶ 39 - 102. On August 20, 2021, Defendant filed a notice of removal from Kern County Superior Court. (Doc. 1).

On March 16, 2022, Defendant filed a motion to stay proceedings in its entirety and for all purposes pending the Supreme Court's decision in *Southwest Airlines Co. v. Saxon*, 142 S. Ct. 638 (2021). (Doc. 15). Plaintiff filed an opposition on April 6, 2022 (Doc. 16), and Defendant filed a reply on April 13, 2022 (Doc. 17). On April 21, 2022, the Honorable Magistrate Judge Sheila K. Oberto issued an order granting Defendant's motion to stay. (Doc. 21). On June 21, 2022, the Supreme Court issued a decision in *Saxon*, and Judge Oberto issued an order lifting the stay on June 29, 2022. (Docs. 22-23).

On July 8, 2022, Defendant filed the instant motion to compel arbitration of Plaintiff's individual claims and to dismiss her class claims now at issue. (Doc. 24). Plaintiff filed an opposition on July 22, 2022 (Doc. 25), and Defendant filed a reply on August 1, 2022 (Doc. 26). On September 1, 2022, and November 2, 2022, Defendant filed notices of supplemental authority relevant to its motion. (Docs. 30, 34).

**Discussion**

    **A.**    **Whether the FAA Applies to Any Arbitration Agreement Between the Parties**

Defendant's motion first requires this Court to decide whether a valid agreement to arbitrate exists between the parties under the Federal Arbitration Act (the "FAA"). This Court concludes that it is bound by the Ninth Circuit's opinion in *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904 (9th Cir. 2020) and finds that the FAA is inapplicable to the parties' agreement.

Under the FAA, an arbitration clause in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA establishes "a liberal federal policy favoring arbitration agreements." *Epic Sys. Corp v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quotation and citation omitted); *see Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (Congress enacted the FAA "to replace judicial indisposition to arbitration").

1 "[C]ourts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted).

Section 4 of the FAA allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court…for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  A court's task on such a petition is to determine "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (*en banc*) (quoting *Chiron Corp v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)); *Mitsubishi Motors Co. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 627-28 (1985).

Section 1 of the FAA contains a transportation worker exemption that excludes from the ambit of the FAA employment contracts of "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 118-19 (2001).  A court must "assess whether a Section 1 exemption applies before ordering arbitration." *In re Van Dusen*, 654 F.3d 838, 846 (9th Cir. 2011); *see New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 537 (2019) (whether an arbitration agreement is part of a contract of employment of a worker engaged in interstate commerce is a question for the trial court before it compels arbitration).

Plaintiff claims as a PVD for Defendant she falls within the FAA's transportation worker exemption.  Significantly, the Ninth Circuit and Supreme Court have provided guidance on this issue.  In *Rittmann*, the Ninth Circuit considered whether an Amazon Flex ("AmFlex") worker fell under the transportation worker exemption. *Rittmann*, 971 F.3d at 915-19.  Like Plaintiff here, AmFlex workers are tasked to pick up packages that had been distributed to Amazon warehouses, "certainly across state lines, and transport them for the last leg of the shipment to their destination." *Id*. at 915.  The *Rittmann* Court noted, "Amazon packages do not 'come to rest,' at Amazon warehouses, and thus the interstate transactions do not conclude at those warehouses." *Id*. at 916.  Rather, the AmFlex workers' last-leg deliveries were a necessary part

of Amazon's interstate transaction, and thus, they were engaged in interstate commerce. *Id*. at 916-17.

In *Saxon*, the Supreme Court held that an airline ramp supervisor for Southwest Airlines whose "work frequently require[d] her to load and unload baggage, airmail, and commercial cargo on and off airplanes that travel across the country" fell within Section 1's exemption. *Saxon*, 142 S. Ct. 1783, 1787.  On the one hand, the Court declined to adopt a broad rule that exempts all workers of a business engaged in interstate commerce, and on the other hand, refused to limit the exemption to only workers who physically traveled across state lines. *Id*. at 1791-93. Instead, the Court determined "any class of workers directly involved in transporting goods across state or international borders falls within § 1's exemption." *Id*. at 1789.  The Court elaborated that, to satisfy § 1's exemption of "transportation worker," the worker "must play a direct and 'necessary role in the free flow of goods' across borders." *Id.* at 1790 (quoting *Circuit City Stores*, 532 U.S. at 115.

Defendant argues the Supreme Court's ruling in *Saxon* "undermined *Rittmann's* reasoning" for concluding that last leg delivery drivers (like Plaintiff here) qualify for the § 1 exemption. (Doc. 24-1 at 8-9).  This Court disagrees for three reasons.  First, Defendant is correct that the Ninth Circuit's analysis in *Rittmann* was informed in part by the interstate nature of Amazon's business model, and *Saxon* clarified that what matters for purposes of determining the applicability of § 1's exemption is the conduct of the employee – not of the employer. However, after *Saxon*, the Ninth Circuit elaborated that its holding in *Rittmann* "was rooted *both* in the interstate nature of Amazon's business, *and* in the fact that 'AmFlex workers complete the delivery of goods that Amazon ships across state lines and for which Amazon hires [them] to complete the delivery.'" *In re Grice*, 974 F.3d 950, 957 n.5 (9th Cir. 2022) (internal citation omitted) (emphasis added).  Thus, the Ninth Circuit's reasoning behind the *Rittmann* holding is wholly consistent with the *Saxon* court's clarification that a plaintiff satisfies the § 1 exemption if he or she plays "a direct and 'necessary role in the free flow of goods' across borders." – as do last leg delivery drivers.

Second, the Ninth Circuit's holding in *Rittmann* relied in part on the First Circuit's resolution of the application of § 1's exemption to last leg drivers "in a nearly identical case." *Rittmann*, 971 F.3d at 910 (citing *Waithaka v. Amazon.com, Inc.*, 96 F.3d 10 (1st Cir. 2020)). Post-*Saxon*, the First Circuit has reaffirmed that its holding in *Waithaka* that last leg delivery drivers satisfy § 1's exemption remains good law, notwithstanding the Supreme Court's clarification in *Saxon* (noted above) that courts must look to the employee's conduct – not the nature of the employer's business. *See Immediato v. Postmates, Inc.*, 54 F.4th 67, 73, 80 (1st Cir. 2022) (reconciling *Saxon* with *Waithaka*). Because the defendant in *Waithaka* (Amazon) "orchestrated the interstate movement" of goods to a customer who paid for local delivery, the First Circuit concluded that such goods "remained within the flow of interstate commerce until arriving at the customer's doorstep." *Id.* at 78. Given its earlier and favorable reliance on *Waithaka* and the First Circuit's recent and persuasive reconciliation of *Waithaka* and *Saxon*, this Court is unpersuaded that the Ninth Circuit would retreat from *Rittmann's* reasoning (as Defendant argues), because, at their core, both *Rittmann* and this case involve interstate commerce that is still in progress through the direct and necessary work of last leg delivery drivers.

Third, while noting that the applicability of § 1's exemption to last leg delivery drivers presented a closer call than the airline ramp supervisor in *Saxon*, the Supreme Court expressly declined to review the Ninth Circuit's decision in *Rittmann*. *Saxon*, 142 S. Ct. at 1789 n. 2 *See Amazon.com, Inc. v. Rittmann*, 141 S. Ct. 1374 (2021) (petition for writ of certiorari denied). This Court does not have the authority to ignore circuit court precedent. *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1211 (9th Cir. 2016). Thus, *Rittmann* remains binding and must be followed by this Court.

In *Rittmann* and the instant case, from the moment the packages entered "the flow of interstate commerce," the goods were always "destined for" customers to whom the last-mile drivers made deliveries. *Waithaka*, 966 F.3d at 13, 20. The last leg of the trip, even if it involved only a trip from an in-state warehouse to an in-state consumer, was a part of an ongoing and continuous interstate transaction. The interstate transaction could not conclude until the package

7

was delivered by Rittmann and Plaintiff. *Rittmann*, 971 F.3d at 916. Thus, last mile delivery drivers play a direct and necessary role in interstate commerce.

In contrast, cases that involve food delivery services for local vendors are distinguishable from the holding in *Saxon*. *E.g. Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 802 (7th Cir. 2020). Food purchased from local vendors has already exited the flow of interstate commerce. *Immediato,* 54 F.4th at 80. "Any subsequent journey taken by the goods in the hands of [delivery] drivers, as part of [a] takeout meal, was not part of the ongoing and continuous interstate transmission of these goods." *Archer v. Grubhub, Inc.*, 490 Mass. 352, 360 (Mass. 2022) (distinguishing last leg delivery drivers from local food delivery drivers); *see Levin v. Caviar, Inc.*, 146 F. Supp.3d 1146, 1153 (N.D. Cal. 2015) ("prepared meals from local restaurants are not a type of good that are 'indisputably part of the stream of commerce.'"). Therefore, food delivery drivers for local vendors do not constitute a class of workers directly involved in transporting goods across state or international borders that fall within Section 1's exemption. *Saxon*, 142 S. Ct. 1789; *see Domino's Pizza, LLC v. Carmona*, 143 S. Ct. 361 (2022) (the Supreme Court vacated the Ninth Circuit's opinion that pizza delivery drivers were interstate transportation workers under Section 1 of the FAA and remanded the case for further consideration in light of *Saxon*).

Accordingly, the Court finds that the Section 1 exemption applies, and therefore, the Court cannot compel arbitration under the FAA. As such, the Court now must turn to whether California law requires enforcement of the arbitration agreement. *See* Boyd Decl. Ex. A. (if the FAA does not apply to the Agreement, then the law of the state in which services were primarily performed shall govern). *E.g., Palcko v. Airborne Exp., Inc.*, 372 F.3d 588, 596 (3d Cir. 2004) (enforcing FAA-exempt arbitration agreement under state law); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1472 (D.C. Cir. 1997) ("[W]e have little doubt that, even if an arbitration agreement is outside the FAA, the agreement still may be enforced"); *Breazeale v. Victim Servs., Inc.*, 198 F. Supp.3d 1070, 1079 (N.D. Cal. 2016) ("when a contract with an arbitration provision falls beyond the reach of the FAA, courts look to state law to decide whether arbitration should be compelled nonetheless.").

**B.      Whether the Parties Entered into an Enforceable Arbitration Agreement Under State Law**

Under both the FAA and California's Arbitration Act ("CAA"), arbitration agreements are "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Cal. Code Civ. P. § 1281; *Concepcion*, 563 U.S. at 336.  California law, like federal law, generally "favors enforcement of valid arbitration agreements." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 99 (Cal. 2000).

Although the CAA's scope is generally similar to the FAA's, there are differences in application. The FAA preempts both state judicial rulings and legislation disfavoring arbitration. *Perry v. Thomas*, 482 U.S. 483, 490-91 (1987).  In contrast, "the CAA, being a state statute, 'obviously does not prevent [California's legislature] from selectively prohibiting arbitration in certain areas.'" *Tiri v. Lucky Chances, Inc*., 226 Cal. App. 4th 231, 249, n. 12 (Cal. Ct. App. 1st. Dist. 2014) (quoting *Armendariz*, 24 Cal. 4th at 98).  Moreover, no public policy favors requiring arbitration of issues that the parties have not agreed to arbitrate. *Rebolledo v. Tilly's, Inc.*, 228 Cal. App. 4th 900, 912 (Cal. Ct. App. 4th Dist. 2014).  In ruling on a motion to compel arbitration, the court, guided by general principles of California law, must first determine whether the parties agreed to arbitrate the dispute. *Mendez v. Mid-Wilshire Health Care Center*, 220 Cal. App. 4th 534, 541 (Cal. Ct. App. 2d Dist. 2013).

Under the CAA, "[t]he trial court may resolve motions to compel arbitration in summary proceedings, in which…'the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination.'" *Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th 676, 683 (Cal. Ct. App. 2d. Dist. 2014) (quoting *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 972 (Cal. 1997).  The party seeking arbitration bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence, and the party opposing arbitration bears the burden of proving any defense against enforcement by a preponderance of the evidence. *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (Cal. 2012).

The threshold issue in deciding a motion to compel arbitration is whether the parties agreed to arbitrate. *Van Ness Townhouses v. Mar Indus. Corp.*, 872 F.2d 754, 756 (9th Cir. 1988). Plaintiff argues Defendant failed to establish an agreement to arbitrate by a preponderance of the evidence that an arbitration agreement existed between the parties. (Doc. 25 at 13-16). Specifically, Plaintiff contends Defendant failed to prove mutual assent to the agreement and that her signature on the agreement was authentic and valid. *Id.* Plaintiff asserts the declaration of Jeffrey Boyd failed to show he had personal knowledge that Plaintiff signed the arbitration agreement. *Id.* at 15-16 (citing Cal. Evid. Code §§ 403(a), 702(a)). Plaintiff also argues Boyd's declaration contains hearsay statements. *Id.* at 23-26 (citing Fed. R. Evid. 802); *Gamboa v. Northeast Community Clinic*, 72 Cal. App. 5th 158 (Cal. Ct. App. 2d. Dist. 2021). In addition, Plaintiff claims there was no mutual assent as Defendant did not sign the arbitration agreement. *Id.* at 16.

Plaintiff's claim that an arbitration agreement does not exist between the parties is without merit. The declaration of Mr. Boyd establishes he had personal knowledge that a valid arbitration agreement existed between the parties. Under Fed. R. Evid. 602[2], a witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's testimony. *Id.*

Here, Mr. Boyd provides information about his position and responsibilities as a Talent Acquisition Manager, his access to records maintained by Defendant in its usual course of business for PVDs, the process by which Plaintiff created her profile and login information on Defendant's employment portal, and how she accessed and signed the agreement. Boyd Decl. ¶¶ 1-3, 7. This information lays a proper foundation and establishes Boyd's personal knowledge of the arbitration agreement attached to his declaration. Boyd Decl. Ex. A; *see Wright v. Sirius XM*

---

[2] Plaintiff improperly cites to sections 403 and 702 of the California Evidence Code for her contention that Mr. Boyd lacks personal knowledge. Because this case is being heard in federal court, the Federal Rules of Evidence govern. *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 667 (9th Cir. 2003); *Quintero v. United States*, No. 08-CV-1890, 2011 WL 83675, at *5 (E.D. Cal. Mar. 2, 2011) ("Admissibility of evidence in federal actions is governed by the Federal Rules of Evidence").

1   *Radio Inc.*, No. SACV 16-01688 JVS (JCGX), 2017 WL 4676580, at *2 (C.D. Cal. June 1, 2017

2   (a witness's review of business records and familiarity with company procedures laid a proper

3   foundation and established her testimony about arbitration was based on her personal

4   knowledge); *compare Gamboa*, 72 Cal. App. 5th at 171 ("The Clinic could have met its burden in

5   other ways, including a declaration from the Clinic's custodian of records").

6       Plaintiff's hearsay objections also fail. Mr. Boyd's declaration is based on his personal

7   knowledge and experience of Defendant's application process, a regularly conducted activity, and

8   that Plaintiff executed the arbitration agreement as part of that process. Fed. R. Evid. 803(6); *see*

9   *J.P. v. Educ. Testing Servs.*, No. CV 20-4502 PSG (PVCx), 2020 WL 10693044, at *11 (C.D.

10  Cal. Oct. 30, 2020) (the executive director could testify about the records of a regularly conducted

11  activity without violating the hearsay rule). *See also Stover-Davis v. Aetna Life Ins. Co.*, No.

12  1:15-cv-1938-BAM, 2016 WL 2756848, at *3 (E.D. Cal. May 12, 2016) (at this stage, the

13  objection must focus on the admissibility of the document's contents, not its form).

14      Plaintiff's claim an arbitration agreement does not exist as Defendant did not sign the

15  document is unavailing. Under California law, the writing memorializing an arbitration

16  agreement need not be signed by both parties to be upheld as a binding arbitration agreement.

17  *Serafin v. Balco Properties Ltd., LLC*, 235 Cal. App. 4th 165, 176 (Cal. Ct. App. 1st. Dist. 2015)

18  (petition for review denied). "It is not the presence or absence of a signature [on an agreement]

19  which is dispositive; it is the presence or absence of evidence of an agreement to arbitrate which

20  matters." *Id*. (citing *Banner Entertainment, Inc. v. Superior Court*, 62 Cal. App. 4th 348, 361

21  (Cal. Ct. App. 2d. Dist. 1998). Evidence confirming the existence of an agreement to arbitrate,

22  despite an unsigned agreement, can be based, for example, on "conduct from which one could

23  imply either ratification or implied acceptance of such a provision." *Id*.

24      In this case, Defendant did not sign the arbitration agreement. *See* Boyd Decl. Ex. A.

25  However, the evidence shows Defendant intended to be bound by the arbitration agreement.

26  Defendant authored the agreement, provided the agreement to Plaintiff through its portal,

27  accepted Plaintiff's employment application, hired Plaintiff, and filed this motion to compel

28

1 arbitration. Boyd Decl. ¶¶ 1-3. Accordingly, a valid arbitration agreement exists between the parties.

Plaintiff's related claim that she neither read nor intended to be bound by the arbitration agreement is contradicted by her signature on the agreement (a signature she does not disavow applying) acknowledging her review and assent to the agreement's terms.[3] Under California law, electronic signatures are acceptable if they are "the act of the person," which "may be shown in any manner, including a showing of the efficacy of any security procedure" that applies to the electronic signature process. Cal. Civ. Code § 1633.9(a). When Plaintiff logged-in to Defendant's online portal, she checked a box stating, "I agree that my electronic signature is the legally binding equivalent to my handwritten signature. By my electronic signature, I acknowledge that I have carefully reviewed this Agreement and understand its contents." Romero's user account was also safeguarded by a unique, confidential password to which Defendant had no access. Boyd Decl. ¶ 2.

Plaintiff next argues she is not subject to arbitration as the scope of the agreement does not cover her statutory claims, her statutory rights are not subject to negotiation or waiver and that the arbitration agreement is unconscionable. (Doc. 25 at 17-22). Ordinarily, courts may refuse to enforce arbitration agreements upon such grounds that exist in law or in equity for the revocation of any contract. *Epic Sys. Corp*, 138 S. Ct. at 1622. However, the Court lacks the authority to decide these issues as the arbitration agreement includes a delegation clause.

"Although gateway issues of arbitrability are typically reserved for the court, parties may agree to delegate them to the arbitrator." *Momot v. Mastro*, 652 F.3d 982, 987 (9th Cir. 2011) (citing *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-70 (2010)). Courts should not assume parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 531 (2019) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1985)). Language that delegates to an

---

[3] Plaintiff's claim to have not read or reviewed the arbitration agreement is, in all events, irrelevant. *See Harris v. TAP Worldwide*, *LLC*, 248 Cal. App. 4th 373, 383 (Cal. Ct. App. 2d Dist. 2016 ("The fact that defendant either chose not to read or take the time to understand these provisions is legally irrelevant.") (collecting cases).

12

arbitrator the authority to determine "the validity or application of any of the provisions of the arbitration clause," constitutes clear and unmistakable evidence. *Momot*, 652 F.3d at 987 (citing *Rent-A-Center*, 130 S. Ct. at 2777). Where an express delegation clause exists, unless a party opposing enforcement of the agreement *specifically* challenges the delegation clause, courts must treat it as valid, leaving any challenge to the validity of the agreement as a whole for the arbitrator. *Rent-A-Center*, 561 U.S. at 72 (emphasis added); *see Brennan v. Opus Bank*, 796 F.3d 1125, 1133 (9th Cir. 2015) (a party challenging an arbitration agreement on unconscionability grounds must do so specifically with respect to the delegation provision to resist enforcement thereof).

In this case, the express terms of the delegation clause provide "the Arbitrator, and not any court shall have exclusive authority to resolve any dispute relating to the validity applicability, enforceability, unconscionability or waiver of this Agreement." Boyd Decl. Ex. A. ¶ 2. Thus, it is clear and unmistakable from the text of the agreement, that the arbitrator, not the court, shall resolve questions of arbitrability. *See Mohamed*, 848 F.3d at 1208-09 (holding similar language in a delegation clause was clear and unmistakable).

Plaintiff has failed to specifically challenge the agreement's delegation clause. *See generally* (Doc. 25). Plaintiff only challenges that the agreement as a whole is unenforceable. Plaintiff's arguments regarding the scope of the arbitration agreement, the agreement's enforceability under California's Labor Code, and Plaintiff's claim the agreement is unconscionable may well render the claims unarbitrable. "But under the contract, the parties clearly and unmistakably delegated this question to the arbitrator." *Ratajesak v. New Prime, Inc.*, No. SA CV 18-9396-DOC (AGRx), 2019 WL 1771659, at *6 (C.D. Cal. March 20, 2019). Plaintiff can and should raise her challenges before the arbitrator.

Defendant also moves for dismissal of Plaintiff's representative claims because they exceed the scope of claims permitted by the arbitration agreement. (Doc. 24-1 at 13). Having not reached the gateway questions of arbitrability, and instead finding that such questions are delegated to the arbitrator, the Court finds that dismissal of Plaintiff's class claims at this juncture would be inappropriate.

**Conclusion and Order**

Accordingly, it is HEREBY ORDERED:

1. Defendant's motion to compel arbitration of Plaintiff's individual claims and to dismiss her class claims (Doc. 24) is GRANTED IN PART as to Plaintiff's request to compel arbitration as to Plaintiff's individual claims;

2. The claims alleged by Plaintiff against Defendant included in the Complaint are submitted to arbitration pursuant to the arbitration agreement set forth in Defendant's "Acknowledgement of PEAK Season Hiring Policy";

3. Defendant's request to dismiss Plaintiff's class claims is stayed pending the arbitrator's resolution of the arbitrability of Plaintiff's individual claims;

4. Defendant shall file a notice of completion with the Court within thirty (30) days of the completion of arbitration;

5. The Court stays this action pending the outcome of arbitration; and

6. On or before April 10, 2023, the parties shall file a status report informing the Court of the status of the arbitration proceedings. The parties shall also continue to file a joint status report indicating the outcome and/or status of the underlying action every ninety (90) days after filing the April 10, 2023 status report until the dispute between the parties has been settled or otherwise resolved.

IT IS SO ORDERED.

Dated:   **January 20, 2023**                          _____
                                                    UNITED STATES MAGISTRATE JUDGE